UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-                                                          22-CR-293 (JPO)

JOWENKY NUNEZ JR., *et al.*,                    OPINION AND ORDER
                     Defendants.

J. PAUL OETKEN, District Judge:

This multi-defendant case involves charges of racketeering, firearms, narcotics, and violent offenses. The first trial is scheduled to begin on April 7, 2025. Before the Court now are various defendants' pretrial motions requesting severance of portions of the indictment, early disclosure of evidence, and dismissal of certain charges.

## I.    Introduction

Defendants in this case are charged in a forty-six-count indictment based on their participation in the allegedly criminal organization Own Every Dollar ("OED"), a subset of the Trinitarios gang operating in Washington Heights, Queens, and the Bronx. Defendants allegedly engaged in "a series of violent disputes with rivals of the OED Enterprise," sold narcotics in Manhattan and the Bronx, and used violence to "protect and expand their narcotics business, to protect fellow members and associates of [OED]," and to "promote the standing and reputation of OED" and its members. (ECF No. 326 ("S7") ¶¶ 3-5.) The charges in the latest superseding indictment include racketeering conspiracy, narcotics conspiracy, various murders, attempted murders, robberies, assaults, and discharges of weapons, and related firearms violations. (*See id.*)

Because of the large number of defendants—thirteen as of the publication of this opinion—the Court ordered separate trials. (Minute Entry on Sept. 18, 2024.) The first trial

group, including defendants Jowenky Nunez Jr., Brian Hernandez, and Iyaury Rodriguez-Rosario,[1] is scheduled to begin on April 7, 2025.  Before the Court are various pretrial motions filed by five defendants, including two defendants in the first trial group—Jowenky Nunez Jr. and Brian Hernandez—and three defendants in second trial group—Hugo Rodriguez, Jesus Zapata, and Brayan Lloret.

## II.    Discussion

### A.    Zapata and Lloret

Zapata and Lloret jointly request an order "directing the Government to disclose . . . any statements from co-defendants at least 30 days in advance of trial, pursuant to *Bruton v. United States*, 391 U.S. 123 (1968)."  (ECF No. 471 at 1.)  Currently, Zapata and Lloret are scheduled to stand trial in group two, and their trial is scheduled to begin October 6, 2025.  The Government has indicated that it does not object to disclosing *Bruton* materials at least 30 days prior to that trial date.  Zapata and Lloret's motion is thus granted, and the Government is directed make such disclosures on or before September 5, 2025.  Should the scheduled trial date change such that earlier disclosure becomes necessary, Zapata and Lloret may renew their motion.

### B.    Rodriguez

Rodriguez moves the Court to order a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f).  (ECF No. 432 ("Rodriguez Mot.").)  As relevant here, Rodriguez is charged (along with all other defendants) with various narcotics-related counts.  These include:

---

[1] Jerrin Pena was initially scheduled to stand trial in the first group, but has since pleaded guilty (ECF No. 492) and is awaiting sentencing.

- the overarching racketeering conspiracy (Count 1), which involves alleged narcotics distribution (S7 ¶¶ 1-9), and a narcotics-related special sentencing factor (*id.* ¶¶ 15-17);

- the related narcotics conspiracy (Count 44) (*id.* ¶¶ 110-12); and

- use, carrying, and possession of a firearm in connection with drug trafficking (Count 45) (*id.* ¶¶ 113).

Rodriguez is also charged with attempted murder and discharging a firearm based on his shooting of an individual on OED's orders in August 2021 (Counts 27 and 28).  (S7 ¶¶ 69-72.)

The Government first argues that Rodriguez's motion should be denied due to counsel's failure to comply with Local Criminal Rule 16.1, which requires defense counsel to confer with the Government in order to resolve discovery disputes before raising them with the Court, and to include an affidavit that such efforts have occurred.  (Opp. at 42-43.)  After the Government filed its opposition, counsel for Rodriguez filed a supplemental letter "certify[ing] under the penalty of perjury that we have had several discussions with the Government about this case, and they have not provided us with any information about our client's involvement in any specific narcotics sales or possessions, or even the dates, locations or drug types."  (ECF No. 448 at 1.)  Because counsel had in fact conferred with the Government and merely omitted the required affidavit as a technical error, the Court is not inclined to reject Rodriguez's request on that basis.

On the merits, Rodriguez argues that the indictment lacks sufficient detail as to the particular drugs involved, providing a "laundry list" but "[n]o further information."[2]  (Rodriguez Mot. at 1.)  Rodriguez also contends that the discovery provided is not sufficient to "particularize

---

[2] The indictment lists fentanyl, heroin, cocaine, cocaine base, oxycodone, methamphetamine, and marijuana.  (S7 ¶¶ 110-12.)

the charges sufficient for the defendant to prepare a defense," as it includes only "social media references to marijuana and pills of a particular color but otherwise unknown content." (*Id.*) Rodriguez claims that "the volume of discovery has been nothing short of overwhelming" and that the narcotics charges here carry mandatory minimum sentences. (*Id.* at 2.) Rodriguez therefore requests a bill of particulars that includes "the time, date, location and quantity of the defendant's possession and/or sale of each of the drugs specified in the indictment"; "whether such activity was individual or acting in concert with others" and, if in concert, which individuals were involved; and "police and laboratory reports" for any activity involving "undercover sales or the recovery of drugs by any other means." (*Id.*) The Government responds that the requested information is "not necessary" to Rodriguez's defense, and would "only serve to impermissibly constrain the Government's proof at trial." (ECF No. 440 ("Opp.") at 39.)

Federal Rule of Criminal Procedure 7(f) permits a defendant to seek a bill of particulars "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). "Whether to grant a bill of particulars rests within the sound discretion of the district court." *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984). "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (internal quotation marks omitted). If the information the defendant seeks "is provided in the indictment or in some acceptable alternate form," such as discovery, no bill of particulars is required. *Bortnovsky*, 820 F.2d at 574. Moreover, "[t]he

Government is not required to disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed. Therefore, 'the Government is not required to give information that would, in effect, give the defendant a preview of the Government's case before trial.'" *United States v. Triana-Mateus*, No. 98-CR-958, 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002). "As a general rule, [a] defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly," nor does he need "[d]etails as to how and when the conspiracy was formed, or when each participant entered it, . . . before trial." *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989).

On the one hand, it is true that the Government does not need to prove the commission of any overt act to prove a violation of either the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), or 21 U.S.C. § 846. *See Salinas v. United States*, 522 U.S. 52, 63 (1997) (discussing RICO); *United States v. Shabani*, 513 U.S. 10, 15 (1994) (discussing Section 846). The indictment here is formally sufficient, as it states the types and amounts of the drugs distributed as part of the charged narcotics conspiracy, as well as the statutory mandatory minimum that applies for each drug. (*See* S7 ¶ 112.) Accordingly, courts in this District have long denied requests for details about the specific conduct underlying a defendant's participation in similar types of conspiracies, including even the dates of crimes and the names of victims. *See, e.g.*, *United States v. Cruz*, No. 94-CR-313, 1995 WL 617220, at *2 & n.1 (S.D.N.Y. Oct. 20, 1995); *United States v. Mandell*, 710 F. Supp. 2d 368, 384-85 (S.D.N.Y. 2010); *United States v. Miller*, No. 12-CR-368, 2012 WL 4791992, at *4 (S.D.N.Y. Oct. 9, 2012). This includes requests for further "evidentiary detail," such as "dates, times, identities of co-conspirators, and

other details." *See United States v. Roberts*, No. 01-CR-410, 2001 WL 1602123, at *13 (S.D.N.Y. Dec. 14, 2001).

On the other hand, courts have sometimes required more from indictments charging complex, multi-year narcotics conspiracies by simply restating the relevant statutory language. For example, the Second Circuit determined that a bill of particulars was warranted where an indictment "did not provide a single detail about the complex multi-year conspiracy nor about the role that the defendant . . . played," and "[t]he only information provided was its duration, the names of the co-defendants, and those of the four narcotic drug controlled substances that the defendants conspired to possess with the intent to distribute." *United States v. Barnes*, 158 F.3d 662, 664 (2d Cir. 1998).[3]  Similarly, a judge in the Eastern District of New York ordered a bill of particulars where a "bare-bones" indictment charged a four-year drug conspiracy. *See United States v. Wilson*, 493 F. Supp. 2d 364, 374 (E.D.N.Y. 2006).  That court refused the defendant's request for dates and locations of his participation in the conspiracy, the names of his co-conspirators, and any overt acts he committed. *Id.* at 374-75.  It granted, however, his request for details about his alleged role in the conspiracy. *Id.*  The court noted that "a bill of particulars is all the more important in a narcotics conspiracy case because the indictment itself provides so little detail." *Id.* at 374 (quoting *United States v. Ramirez*, 54 F.Supp.2d 25, 30 (D.D.C.1999)) (brackets omitted).

Balancing these considerations, the Court concludes that a bill of particulars is not required here.  Rather than merely restating the statutory language, the indictment provides concrete details about Rodriguez's alleged participation in the conspiracy, including an attempted murder he allegedly committed in August 2021 (Counts 27 and 28). (*See* S7 ¶¶ 69-

---

[3] The court in *Barnes* ultimately found the error to be harmless. *Barnes*, 158 F.3d at 666.

72.)  The indictment also details the types and quantities of drugs charged under 21 U.S.C. § 846 (S7 ¶¶ 17, 112), obviating defense counsel's concern that Rodriguez is unaware of the mandatory minimum sentences he faces (*cf.* Rodriguez Mot. at 2).  Courts in this district have repeatedly denied requests under similar circumstances.  *See, e.g.*, *United States v. Calvente*, No. 12-CR-732, 2013 WL 4038952, at *1 (S.D.N.Y. July 26, 2013); *United States v. Muyet*, 945 F. Supp. 586, 599 (S.D.N.Y. 1996).

The Government also notes that it has provided copious discovery in this case, including nineteen separate productions and over 1.5 terabytes of data (89,312 files).  (Opp. at 9.)  That discovery contains police records and files documenting the sale of narcotics to undercover detectives and narcotics-related arrests as part of the charged conspiracies, along with information from social media accounts belonging to Rodriguez's co-defendants.  (*Id.* at 45.) Also included are the Government's applications for "dozens of search warrants issued in this case," which the Government represents "set forth in specific detail information about the OED Enterprise . . . and the underlying conduct upon which the charges are based."  (*Id.*)  Although it is possible that the voluminous nature of discovery can, at times, render it less useful, that does not appear to be the case here.  *Cf. United States v. Ikoli*, No. 16-CR-148, 2017 WL 396681, at *5-6 (S.D.N.Y. Jan. 26, 2017) (considering a request for a bill of particulars where the indictment was short, overly general, included no specific dates, and was supplemented only by "dumping voluminous discovery upon the defendants without any sort of guidance," but ultimately denying the request because the Government was "willing to discuss the discovery and its relation to each defendant with counsel").  Here, while the provided discovery is indeed extensive, it also covers a large number of defendants, was provided early and in more manageable tranches, and works in tandem with the details in the indictment to provide

reasonable guidance to defense counsel.  Rodriguez's request for a bill of particulars is thus denied.

### C.    Nunez Jr. and Hernandez

Nunez Jr. and Hernandez are in the first group of defendants scheduled to go to trial on April 7, 2024.  Because resolving some of their motions requires a holistic understanding of the charges in that first trial group, the Court reviews those charges here:

- Nunez Jr., Hernandez, and Rodriguez-Rosario are charged with participation in a racketeering conspiracy (Count 1) pursuant to RICO, 18 U.S.C. § 1962(c).  (S7 ¶¶ 1-17.)  All three have been notified that the Government will seek sentencing enhancements based on their narcotics-related conduct and their participation in a double murder in July 2020.  (*See id.* ¶¶ 10-17.)  Nunez Jr. also faces a sentencing enhancement based on his alleged participation in additional murders in August 2018 and April 2019.  (*Id.* ¶ 10-11.)

- Nunez Jr., Hernandez, and Rodriguez-Rosario are all charged with murder based on their alleged participation in the murders of Richard Dominguez and Israel Cabrera in July 2020 (Counts 2-5).  (*Id.* ¶¶ 18-25.)

- Hernandez is charged with attempted murder and discharge of a firearm based on the alleged shootings of rival gang members in January (Counts 8 and 9) and February 2020 (Counts 10 and 11), and the alleged shooting of a rival drug dealer in May 2020 (Counts 16 and 17).  (*Id.* ¶¶ 30-33, 34-36, 37, 46-49.)

- Nunez Jr. and Rodriguez-Rosario are charged with attempted murder and discharge of a firearm based on the alleged shooting at a group of rival drug

dealers in June 2020 (Counts 18 and 19), and the alleged shooting of a rival gang member in July 2020 (Counts 20 and 21). (*Id.* ¶¶ 50-53, 54-57.)

- Nunez Jr. is charged with attempted murder and discharge of a firearm based on his alleged shooting of an individual in July 2020 (Counts 22 and 23), his alleged participation in the shooting of at least two individuals in October 2020 (Counts 24 and 25), and his alleged shooting of a bystander in the course of an attempt to shoot a rival gang member in March 2022 (Counts 33 and 34). (*Id.* ¶¶ 58-61, 62-65, 83-86.)

- Nunez Jr. is charged with attempted murder and assault based on the alleged stabbing of a fellow inmate while incarcerated in February 2023 (Count 35). (*Id.* ¶¶ 87-89.)

- Nunez Jr. is charged with robbery and discharge of a firearm based on his alleged participation in the robbery of a drug dealer in January 2022 (Counts 42 and 43). (*Id.* ¶¶ 108-109.)

- Nunez Jr., Hernandez, and Rodriguez-Rosario are all charged with narcotics conspiracy based on their alleged efforts to distribute fentanyl, heroin, cocaine, cocaine base, oxycodone, methamphetamine, and marijuana (Count 44). (*Id.* ¶¶ 110-12.)

- Nunez Jr., Hernandez, and Rodriguez-Rosario are all charged with use/carrying and possession, and interstate transport, of firearms (Counts 45 and 46). (*Id.* ¶¶ 113-14.)

Nunez Jr. and Hernandez bring a number of motions, several of which are joint. The Court first addresses their joint motions, and then their individual ones.

### 1.    Joint Motion for *Bruton* Severance

Hernandez and Nunez Jr. (by joining Hernandez's motion) request severance based on the likely use of co-defendant statements at trial.  Under *Bruton v. United States*, 391 U.S. 123 (1968), and *Crawford v. Washington*, 541 U.S. 36 (2004), co-defendant statements naming a defendant are generally inadmissible where the defendant has no opportunity to cross-examine. This constitutional problem may be remedied, however, by a combination of appropriate redactions and limiting instructions, as long as the redacted statements do not expressly implicate the defendant.  *See Samia v. United States*, 599 U.S. 635, 655 (2023).

The Government argues that any *Bruton* issue here is not ripe for decision, as it is unclear that the Government plans to introduce any problematic statements at trial.  Hernandez acknowledges that the Government has not yet notified him that it intends to offer any such statements, but argues that "if any are offered and implicate him, then a severance should be granted."  (ECF No. 431 ("Hernandez Mot.") at 5.)[4]

The Government is correct, both because it may not offer any *Bruton* statements, and because such statements might be cured through appropriate redactions and limiting instructions. Accordingly, Hernandez and Nunez Jr.'s request is denied without prejudice to renewal.

### 2.    Joint Motion for *Brady* Disclosure

Hernandez and Nunez Jr. (by joining Hernandez's motion) next request immediate disclosure of supposedly exculpatory evidence the Government possesses pertaining to a known but unnamed suspect in the murders of Richard Dominguez and Israel Cabrera, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  Specifically, the motion requests:

---

[4] Hernandez's motion does not have ECF-generated page numbers, so this opinion cites to it using its internal page numbers.

> 1) the identity and contact information of any witness implicating this suspect, 2) all documents, records, and interviews from all law enforcement and prosecutor offices, including the New York City Police Department, the Bronx District Attorney's Office, [and federal entities], relating to this suspect, 3) all information: (a) exculpatory or otherwise favorable to the defendant; (b) relevant to the credibility and/or character of the witnesses which the government seeks to call at the trial . . . ; or (c) [that] reveals factual inconsistencies with the proof which shall be presented . . . at trial.

(Hernandez Mot. at 11.)  Defense counsel claims that it submitted a *Brady* demand letter on June 11, 2024 and received no reply from the Government.  (*Id.* at 8-9.)

*Brady* requires that "[t]o the extent that a prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government [must] . . . disclose that evidence to the defendant."  *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir.1998).  This includes "not only evidence that is exculpatory, *i.e.*, going to the heart of the defendant's guilt or innocence, but also evidence that is useful for impeachment, *i.e.*, having the potential to alter the jury's assessment of the credibility of a significant prosecution witness."  *Id.*; *see also Giglio v. United States*, 405 U.S. 150, 154 (1972)).  Contrary to defense counsel's view, *Brady* does not require "immediate[]" disclosure (*cf.* Hernandez Mot. at 9)—in fact, the Second Circuit has held that even disclosures "on the eve of trial" or "after trial has begun" can sometimes be sufficient, provided they are "fuller and more thorough than may have been required if the disclosure had been made at an earlier stage."  *Leka v. Portuondo*, 257 F.3d 89, 101 (2d Cir. 2001).  Rather, the test is whether disclosure is sufficient for "the defense to learn all that it need[s] to know" and "use the evidence" at trial.  *Id*; *see also United States v. Carrington*, No. 02-CR-897, 2002 WL 31496199, at *3 (S.D.N.Y. Nov. 7, 2002) ("As a general rule, *Brady* does not require immediate disclosure of exculpatory evidence and impeachment material upon defendant's request.");  *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001) ("[W]e reiterate the longstanding constitutional principle that as long as a defendant possesses *Brady* evidence in time for its

effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner."). This applies to both *Brady* (exculpatory) and *Giglio* (impeachment) evidence. *See Carrington.* 2002 WL 31496199, at *3 ("[T]he timing requirement for disclosure of such *Giglio* material is the same as that for exculpatory materials required to be disclosed under *Brady*.").

The Government acknowledges that it has received defense counsel's *Brady* request and represents that is in the process of searching materials in its possession. (Opp. at 52-53.) The Government also states that it has already produced some responsive materials, and plans to turn any remaining materials should it uncover them. (*Id.* at 53.) Defense counsel provides no basis, other than the Government's failure to respond to its letter, for the notion that further undisclosed *Brady* or *Giglio* evidence exists. In light of the Government's representation that it recognizes its obligations under *Brady*, the Court sees no basis for granting specific requests for *Brady* material in the Government's possession at this juncture. *See United States v. Gallo*, No. 98-CR-338, 1999 WL 9848, at *8 (S.D.N.Y. Jan. 11, 1999) (denying defendant's motion to compel production of *Brady* material based on the Government's representations that it was "aware of its obligations under *Brady*" and would "produce any *Brady* material to the defense well before trial"). Hernandez and Nunez Jr. are, however, always free to renew their motion at a later time, should they develop reasons to believe the Government is improperly withholding such evidence.

With respect to materials held by state authorities, the Government argues that it is under no obligation "to collect records from [an] independent state authority" when such authority is not a "member of the prosecution team," and that here the state prosecutors were working independently. (Opp. at 53-54.) The Government is correct that the "obligation to disclose

12

*Brady* material extends to any material in the possession of any entity that has acted as an 'arm of the prosecutor' in a given case. *United States v. Middendorf*, No. 18-CR-36, 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (quoting *United States v. Blaszczak*, 308 F. Supp. 3d 736, 741 (S.D.N.Y. 2018)). In determining whether state actors are part of the "prosecution team," courts consider factors such as "whether the other agency: (1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by or shared documents with the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings." *Id.*

The Government represents that at most one of these factors—limited information sharing—is satisfied with respect to the Bronx District Attorney's Office, but does not address the factors with respect to the NYPD. Defense counsel does not address the relevant balancing analysis at all. Accordingly, the Court denies Hernandez and Nunez Jr.'s request with respect to the NYPD and the Bronx District Attorney's Office, without prejudice to renewal should defense counsel develop reason to believe that those offices have substantially contributed to the instant prosecution.

### 3.  Joint Motion for Advance Disclosure of 404(b) Evidence

Hernandez and Nunez Jr. (by joining Hernandez's motion) next request "immediate" disclosure of Federal Rule of Evidence 404(b) evidence of other crimes, wrongs, or acts that the Government intends to introduce at trial. (Hernandez Mot. at 11.) Rule 404(b) requires that the Government "provide reasonable notice of any such evidence . . . so that the defendant has a fair opportunity to meet it," and that it must do so "in writing before trial — or in any form during trial if the court, for good cause, excuses lack of pretrial notice." Fed. R. Evid. 404(b)(3). But as the Government correctly notes, Rule 404(b) does not specify a time period within which

disclosure must occur, and certainly does not compel "immediate" disclosure. *See United States v. Jones*, No. 19-CR-54, 2024 WL 1704756, at *4 (E.D.N.Y. Apr. 19, 2024) ("Regarding the disclosure of 404(b) evidence, 'courts in the Second Circuit routinely find that two weeks' notice is "reasonable" for purposes of Rule 404(b) disclosures.'"); *see also United States v. Ramirez*, No. 20-CR-022, 2022 WL 865860, at *2 (S.D.N.Y. Mar. 23, 2022) (denying a similar request as "premature"); *United States v. Lopez*, No. 18-CR-736, 2019 WL 4733603, at *11 (S.D.N.Y. Sept. 27, 2019) (finding that "sixty days [notice] is quite excessive"). Neither of the two cases that defense counsel cites involves such "immediate" disclosure. *See United States v. Gambino*, 818 F. Supp. 541, 552-53 (E.D.N.Y. 1993) (granting a request for "reasonable notice" of Rule 404(b) material); *United States v. Kelly*, 420 F.2d 26, 29 (2d Cir. 1969) (involving failure to comply with Rule 16, not timely disclosure under Rule 404). The Court has already ordered the early disclosure of Rule 404(b) evidence (*see* ECF No. 518), and that disclosure has presumably already occurred. Accordingly, this motion is denied as moot.

### 4.    Nunez Jr.'s Motion for Advance Disclosure of 801(d) Evidence

Nunez Jr. raises the legitimate prospect that some Rule 801(d) evidence—involving co-conspirator statements—may ultimately be deemed inadmissible. (ECF No. 436-1 ("Nunez Mot.") at 7-9.) However, Nunez Jr.'s only argument for pretrial disclosure of that evidence is that "early disclosure avoids the possibility of last minute disruptions caused by the need for investigations late in the process." (ECF No. 449 ("Nunez Reply") at 6.) However, "the rule is well settled that rather than prolong the proceedings and provide defendant with a full preview of the Government's case through a pre-trial hearing, the Court should provisionally admit alleged co-conspirators' statements, subject to its determination, at the close of the Government's case, that there is sufficient evidence to make the required findings pursuant to Rule 801(d)(2)(E)." *United States v. Giraldo*, No. 90-CR-085, 1990 WL 134883, at *1 (S.D.N.Y. Sept. 12, 1990)

(collecting cases); *see also United States v. Heatley*, 994 F. Supp. 483, 490 (S.D.N.Y. 1998)

("[T]he Second Circuit has expressly approved the practice of admitting such statements at trial

subject to the government's introduction of evidence which will support the required finding.").

Furthermore, any specific evidentiary issues that do arise pretrial can be addressed in a motion *in

limine*.  Nunez Jr.'s motion for early disclosure of 801(d)(2)(E) evidence is therefore denied.

### 5.    Nunez Jr.'s Motion to Sever Count 35

Although the Government interprets Nunez Jr.'s motion for severance as one for

dismissal of Count 35 (Opp. at 30), counsel for Nunez Jr. insists that it is a motion for a separate

trial on that count, *not* for dismissal (Nunez Reply at 2).  The Government's opposition brief

argues that Nunez Jr. has identified no "rule of federal criminal procedure or any other specific

ground for severance."  (Opp. at 30.)  In response, Nunez Jr.'s counsel points to Federal Rule of

Criminal Procedure 8, which governs the propriety of joinder in the first instance, and Federal

Rule of Criminal Procedure 14(a), which provides that "[i]f the joinder of offenses or defendants

in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or

the government, the *court may order separate trials of counts*, sever the defendants' trials, or

provide any other relief that justice requires."  Fed. R. Crim. P. 14(a) (emphasis added).  The

Government did not submit any response to this clarification, so the Court accepts that

Nunez Jr.'s counsel is requesting relief under either Rule 8 or Rule 14.  Although such relief can

be procedurally proper, it is not warranted here.

At the outset, the issue of whether Rule 8(a) or 8(b) governs Nunez Jr.'s motion is

unsettled in the Second Circuit.  *See United States v. Bonventre*, 646 F. App'x 73, 80 n.1 (2d Cir.

2016) (summary order); *see also United States v. Pizarro*, No. 17-CR-151, 2018 WL 1737236, at

*3 (S.D.N.Y. Apr. 10, 2018) (acknowledging the lack of clarity but analyzing the defendant's

severance request under Rule 8(a)), *aff'd*, No. 19-2391, 2023 WL 3332539 (2d Cir. May 10,

2023) (affirming but applying the Rule 8(b) standard).  Regardless, because joinder is proper under the more restrictive 8(b) standard, the Court need not resolve that question here.  *Cf. United States v. Turoff*, 853 F.2d 1037, 1042-43 (2d Cir. 1988) ("8(b) provides a more restrictive test when multiple defendants are involved.").

Rule 8(b) permits joinder of defendants (and arguably of offenses, in a multi-defendant trial, *see United States v. Shellef*, 507 F.3d 82, 97 (2d Cir. 2007)) where they "have participated in the same act or transaction, or . . . the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  The Second Circuit has "construed this language to mean that joinder is proper where two or more persons' criminal acts are []'unified by some substantial identity of facts or participants,' or 'arise out of a common plan or scheme.'"  *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990) (quoting *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir.1989)).  "As a general rule, these requirements are satisfied where the Government alleges the existence of an overall conspiracy linking the various substantive crimes charged in an indictment."  *United States v. Lech*, 161 F.R.D. 255, 256 (S.D.N.Y. 1995).

Here, Nunez Jr. is charged in Count 1, which alleges an overarching RICO conspiracy encompassing *inter alia* a series of violent acts "in furtherance of the conduct of the OED Enterprise's affair."  (S7 ¶¶ 2-3.)  The allegations in Count 1 encompass "at least" the period between 2018 and August 2023.  (*Id.* ¶ 8.)[5]  Count 35 alleges that, while incarcerated at the Metropolitan Detention Center in Brooklyn, New York ("MDC"), Nunez Jr. and others assaulted and attempted to murder another inmate in exchange for payment by OED and to enhance their

---

[5] Nunez, Jr.'s counsel writes that "[u]ntil November, 2023, the government has always contended that the racketeering conspiracy ended with the return of the second indictment." (Nunez Reply at 3.)  This is false, as the Seventh Superseding Indictment was filed in September 2023 and expressly alleges that the conspiracy continued at least through August 2023.  (S7 ¶ 8.)

standing in the OED organization.  (*Id.* ¶ 89.)  As the conduct charged in Count 35 is clearly part of the series of acts or transactions charged in Count 1, joinder is proper under Rule 8(b).  *See, e.g.*, *United States v. Rojas*, 655 F. Supp. 1156, 1169 n.4 (E.D.N.Y. 1987) ("Since [Defendant] is charged with participating in a series of acts or transactions that were part of a conspiracy, joinder was permissible under Rule 8(b).").

"Rule 14 picks up where Rule 8 leaves off," permitting a court to order separate trials where joinder would impose "substantial prejudice" on a defendant.  *United States v. Papadakis*, 510 F.2d 287, 300 (2d Cir. 1975).  "In order to prevail on a motion to sever charges under Rule 14(a), 'the defendant must show not simply some prejudice but substantial prejudice.'"  *United States v. Gracesqui*, No. 10-CR-74, 2015 WL 5231168, at *4 (S.D.N.Y. Sept. 8, 2015), *aff'd*, 730 F. App'x 25 (2d Cir. 2018) (summary order) (quoting *United States v. Werner*, 620 F.2d 922, 928-29 (2d Cir. 1980)).  To avoid "undermin[ing] the policies behind Rule 8 and essentially read[ing] that rule from the books," severance should not be granted "simply on a showing of some adverse effect, particularly solely the adverse effect of being tried for two crimes rather than one . . . ."  *Werner*, 620 F.2d at 929.  Rather, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  Such prejudice might arise if joinder would lead to the presentation of inadmissible evidence to the jury, would try defendants alongside co-defendants with "markedly different degrees of culpability," or would render "essential exculpatory evidence" "unavailable."  *Id.*  Conversely, "[a] defendant must allege more than a generalized threat of jury

confusion or cumulative evidence to succeed in a motion to sever." *Gracesqui*, 2015 WL 5231168, at *4.

Here, Rule 14 severance is not warranted. Nunez Jr. provides no support for his conclusory assertion that OED does not operate in MDC, and the indictment satisfactorily alleges that the assault charged in Count 35 was in aid of the overall RICO conspiracy. Nor does he have a valid argument as to why the video of the assault would be inadmissible, as he allegedly participated in the attack. Finally, he "has not met his burden of showing that . . . a jury would be incapable of evaluating the [MDC assault and the remaining counts] as separate charges," "that a joint trial, when buttressed by a proper limiting instruction, would become too confusing for the jury," that joinder "compromises a specific trial right," or that it would "preclude[] the jury from making a reliable judgment on each separate count." *Cf. Gracesqui*, 2015 WL 5231168, at *5. Nunez Jr.'s request for severance of Count 35 is therefore denied.

### 6.    Nunez Jr.'s Motion to Dismiss the Special Sentencing Factor

The RICO conspiracy charged in Count 1 includes special sentencing factors based on Nunez Jr.'s alleged murders of Nicholas Vargas and Hector Cruz. (S7 ¶¶ 10-11.) Nunez Jr. asks the Court to dismiss these factors, as the murders occurred when he was 17 years old. (Nunez Mot. at 3.)[6] According to Nunez Jr. the Juvenile Delinquency Act (JDA), 18 U.S.C. § 5032, precludes using a defendant's pre-majority conduct to raise the statutory maximum sentence, as

---

[6] Nunez Jr.'s motion only formally requests that he be permitted to "join the Pena motion seeking an order dismissing the special sentencing factor involving the April 14, 2019 murder of Hector Cruz." (Nunez Mot. at 3.) However, if Nunez Jr. was a minor on April 14, 2019, he must necessarily have been a minor at the time of the Nicholas Vargas murder on August 31, 2018. (*Cf.* S7 ¶ 10.) And Nunez Jr.'s reply in support of his motion requests dismissal of the special sentencing factors in paragraphs 10 and 11 of the operative indictment—i.e., both the Vargas and Cruz murders. The Court therefore interprets Nunez Jr.'s motion as applying to both murders, not just the Cruz murder.

doing so is more akin to a "separate substantive count than a RICO predicate act." (Nunez Mot. at 4-5.)[7]

While the Second Circuit has not yet addressed this precise question, its reasoning in *United States v. Wong*, 40 F.3d 1347 (2d Cir. 1994), forecloses Nunez Jr.'s argument. There, the court held that, regarding "conspiracies begun while a defendant was a minor but completed after his eighteenth birthday," "the JDA does not prevent an adult criminal defendant from being tried as an adult simply because he first became embroiled in the conspiracy with which he is charged while still a minor." *Id.* 1365 (cleaned up). The court explained that this is analogous to the doctrine of "ratification": "just as a minor legally incapable of entering a contract may nonetheless be found to have 'ratified' a contract by taking actions after attaining majority consistent with an intent to be bound by it, so a defendant may ratify his pre-eighteen participation in a conspiracy by continued participation after attaining majority." *Id.* (citation omitted). In rejecting Wong's contention that he "[could] not be held liable for pre-eighteen conduct," the court explained that "the JDA regulates jurisdiction with respect to the charged offense (here, substantive RICO and RICO conspiracy), not the individual acts comprising the offense," and that as long as "certain acts of the offense occurred after the defendant's eighteenth birthday, the entire case may be tried in accordance with the adult rules of procedure and evidence." *Id.* at 1366-67 (quotation marks omitted). Insofar as pre-majority conduct may be used to establish guilt—i.e., the possibility of a sentence at all—it necessarily follows that such conduct may be used at sentencing.

---

[7] The JDA permits prosecution of juvenile offenders in federal court if the Attorney General certifies a series of enumerated facts. *See* 18 U.S.C. § 5032. No party argues that such certification has taken place here.

*Wong* also forecloses Nunez Jr.'s implicit argument that his juvenile conduct cannot constitute a special sentencing factor under 18 U.S.C. § 1963(a) because it was not "a racketeering activity for which the maximum penalty includes life imprisonment." In *Wong*, the Court rejected the defendant's argument that "acts of juvenile delinquency . . . did not constitute 'racketeering activity' as defined in the RICO statute because they were not 'punishable by imprisonment for more than one year.'" *Id.* at 1367. The *Wong* court explained that RICO's definition of "racketeering activity" refers to conduct that "*generally* is punishable by one year," and that it is "wholly irrelevant" "that, as a juvenile, Wong would have avoided incarceration." *Wong*, 40 F.3d at 1367-68 (emphasis in original); *see also United States v. Paone*, 782 F.2d 386, 393 (2d Cir. 1986) ("The statute is meant to define, in a more generic sense, the wrongful conduct that constitutes the predicates for a federal racketeering charge."). The same logic applies here. While Nunez Jr. himself might not have been eligible for a term of life imprisonment, his conduct—murder—is generally punishable by such a sentence.

This conclusion is bolstered by "substantial out-of-circuit precedent uniformly rejecting the argument that pre-majority conduct could not be considered for purposes of sentencing." *Vargas-De Jesus v. United States*, 813 F.3d 414, 418 (1st Cir. 2016) (collecting and approving of cases from the Sixth, Fourth, Eleventh, and D.C. Circuits). Nunez Jr.'s motion to dismiss the special sentencing factors based on his pre-majority conduct is therefore denied.

### 7.    Hernandez's Motion for Spillover Severance

Hernandez seeks severance from trial group one under Rule 14, arguing that he faces spillover prejudice from separately charged counts as to Nunez Jr. and Rodriguez-Rosario, and that a joint trial will result in the introduction of evidence inadmissible as to Hernandez. (Hernandez Mot. at 5-8.) As explained above, *see supra* Section II.C.5, Hernandez faces a "heavy burden of showing that joinder will result in substantial prejudice." *United States v.*

*Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (quotation marks omitted). This is due to the "preference in the federal system for joint trials of defendants who are indicted together." *Zafiro*, 506 U.S. at 537. "This preference is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." *Cf. United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998). Whether to grant Rule 14 relief is a matter of discretion for the trial court. *United States v. DeVillio*, 983 F.2d 1185, 1192 (2d Cir. 1993).[8]

Hernandez does not face spillover prejudice great enough to justify severance. He, Nunez Jr., and Rodriguez-Rosario are all charged in the most serious counts—the overarching conspiracy (Count 1), and the double murder Richard Dominguez and Israel Cabrera (Counts 2-5). (S7 ¶¶ 1-25.) While Nunez Jr. and Rodriguez-Rosario are charged with attempted murders that did not involve Hernandez, the reverse is true as well—Nunez Jr. and Rodriguez-Rosario are not charged with the shootings alleged in Counts 8 and 9, 10 and 11, and 16 and 17. (S7 ¶¶ 30-32, 33, 34-36, 37, 46-48, 49.) All three defendants are charged in the various firearms and narcotics counts. (S7 ¶¶ 110-14.) It is not the case that Hernandez is charged with a meaningfully less serious or culpable range of conduct than are his co-defendants. And, because they are all charged in the same conspiracy, much of the same evidence will be used against all three. *See Salameh*, 152 F.3d at 111.

Hernandez does not seriously dispute that the indictment sufficiently alleges that he participated with his co-defendants in the same criminal acts in aid of the OED enterprise.

---

[8] The Government's opposition (Opp. at 23) appears to conflate the standard for *granting* Rule 14 relief—substantial prejudice—with the standard for appellate *reversal* of a denial of Rule 14 relief—"prejudice so severe that his conviction constituted a miscarriage of justice." *See United States v. Hernandez*, 85 F.3d 1023, 1029 (2d Cir. 1996). The Court notes that it retains discretion to grant a severance request, even if refusal to grant the request would not "require a new trial." *Cf. id.*

Accordingly, his citation to *United States v. Russo*, 302 F.3d 37, 44 (2d Cir. 2002), is inapposite with respect to evidence of those acts. If the Government seeks to introduce co-defendant statements about acts in which Hernandez did not participate, Hernandez can raise any resulting *Bruton* issues in due course. *See supra* Section II.C.1. Finally, Hernandez raises the prospect that the Government will seek to introduce evidence at trial that is barred by Rule 403 or Rule 404(b) of the Federal Rules of Evidence. Hernandez does not identify any such evidence, and such prejudice may be avoided through appropriate evidentiary rulings or limiting instructions at trial. *Pizarro*, 2018 WL 1737236, at *7. Hernandez's motion for severance is therefore denied.

## III. Conclusion

For the foregoing reasons, the pretrial motions filed by defendants Nunez Jr., Hernandez, Rodriguez, Jesus Zapata, and Lloret are denied.

The Clerk of Court is directed to close the motions at Docket Numbers 429, 432, 436, 438, and 471.

SO ORDERED.

Dated: February 18, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge

22